**Pages 1 - 13**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable Andrew G. Schopler, Judge

| | |
|---|---|
| ELMER LEONEL GARCIA-CASTRO,<br><br>Petitioner,<br><br>VS.<br><br>WARDEN, OTAY ICE DETENTION CENTER, et al.,<br><br>Respondents. | NO. 26-CV-02787-AGS-VET |

San Diego, California
Monday, June 15, 2026

**TRANSCRIPT OF MOTION HEARING**

**APPEARANCES**:

For Petitioner:
PRO SE

For Respondents:
ADAM GORDON
United States Attorney
880 Front Street, Room 6293
San Diego, California 92101
**BY: HUNTER V. NORTON, ESQ.**
**ASSISTANT UNITED STATES ATTORNEY**

Court Interpreter: Matias Pizarro

Reported By: James C. Pence-Aviles, RMR, CRR, CSR No. 13059
Official Court Reporter

**Monday - June 15, 2026** **2:30 p.m.**

**P R O C E E D I N G S**

---000---

**THE CLERK:** Remain seated and come to order. We are once again on the record.

Calling Matter Number 4, 26-CV-2787, Garcia-Castro v. Warden, Otay ICE Detention Center, et al., for a motion hearing.

Please state your appearance for the record.

**MR. NORTON:** Good afternoon, Your Honor. Hunter Norton for respondents.

**THE COURT:** Good afternoon, Mr. Norton.

And have you seen -- oh.

I understand we're -- we're trying to get the petitioner here by video; is that correct, Ms. Cervantes?

**THE CLERK:** No, Your Honor.

**THE COURT:** Here in person?

**THE CLERK:** In person, yes.

**THE COURT:** Okay. And -- Ms. Cervantes.

(Court and clerk confer.)

**THE COURT:** Okay. So, Mr. Norton, I'm told that hopefully we'll have the petitioner here in the next five minutes or so.

So thank you for being here on time.

**MR. NORTON:** My understanding is that they're here,

Your Honor.

So --

**THE COURT:** Okay.

**MR. NORTON:** -- I will -- I've inquired about finding out from the agents escorting petitioner on what -- where they are currently --

**THE COURT:** Okay.

**MR. NORTON:** -- since we've already started.

**THE COURT:** All right. Thank you.

All right. I'm going to step off the bench, and hopefully we'll get Mr. Garcia-Castro here soon, and I'll be back as -- as soon as he's here.

(Recess taken at 2:35 p.m.)

(Proceedings resumed at 2:51 p.m.)

**THE CLERK:** Remain seated and come to order. We are once again on the record.

**THE COURT:** Good afternoon, everyone.

**MR. NORTON:** Good afternoon.

**MR. GARCIA-CASTRO:** (In English) Good afternoon.

**THE CLERK:** Recalling Matter Number 4, 26-CV-2787, Garcia-Castro v. Warden, Otay ICE Detention Center, et al., for a motion hearing.

Please state your appearance for the record.

**MR. NORTON:** Good afternoon again, Your Honor. Hunter Norton for respondents.

**THE COURT:** Good afternoon, Mr. Norton.

**MR. GARCIA-CASTRO:** Very good afternoon.

My name is Elmer Leonel Garcia-Castro.

**THE COURT:** Good afternoon, Mr. Garcia-Castro.

All right. We're here for a hearing on Mr. Garcia-Castro's habeas petition, which is docketed at ECF 1 in the court file.

I'll give the parties my tentative ruling based on my review of the papers and the case law, and then I'll hear oral argument from both sides, and I'm happy to alter or reverse my tentative ruling after I've heard oral argument.

So my -- my tentative ruling is that the habeas petition here should be denied. I think a number of the claims that are raised in the habeas petition, we can deal with rather quickly.

Mr. Garcia-Castro is not subject to a final order of removal. So neither 8 U.S.C. Section 1231, Subsection (a)(6), nor the Supreme Court's guidance in the *Zadvydas* case are implicated at this stage of the proceedings.

His due process claim is exactly the same as the one I ruled on in the last case that I dealt with involving Mr. Garcia-Castro. In that case, I ordered a bond hearing for him, and so I think that one is also not a valid claim for a successive habeas petition.

This does seem to implicate the abuse-of-the-writ doctrine. That doctrine forbids the reconsideration of claims

that were, or could have been, raised in a prior habeas petition, citing to the case of *Eldridge v. Howard*, 70 F.4th 543, Page 551, Ninth Circuit, 2023.

Under this doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show:

Number 1, cause for bringing a successive petition and that prejudice would result; or

Number 2, that a fundamental miscarriage of justice would result from failure to entertain the claim.

Because I already determined the appropriate due process remedy in the last petition, which Mr. Garcia-Castro did not appeal, Mr. Garcia-Castro would need to show prejudice or a fundamental miscarriage of justice in order to be able to be heard again on the same claim for habeas relief. He has not done so, at least thus far in the record before the Court. So I think he runs afoul of the abuse-of-the-writ target -- or writ doctrine as to that argument.

I also would tentatively rule that any challenge to the bond hearing is unexhausted. The statute under which petitioner filed his habeas petition -- that is, 28 U.S.C. Section 2241 -- does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.

But courts require, as a prudential matter, that habeas

petitioners exhaust available judicial remedies before seeking relief under Section 2241. This is citing *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, Page 541, Ninth Circuit, 2004.

"Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered," citing *Laing v. Ashcroft*, 370 F.3d 994, Page 998, Ninth Circuit, 2004.

"When a petitioner does not exhaust administrative remedies, a District Court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies unless exhaustion is excused," citing *Leonardo v. Crawford*, 646 F.3d 1170 -- I'm sorry -- 646 F.3d 1157, at Page 1160, Ninth Circuit, 2011.

Generally, courts require prudential exhaustion if three factors are present:

Number 1, agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

Number 2, relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

Number 3, administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review, citing *Puga v. Chertoff*, 488 F.3d 812, Page 815, Ninth Circuit, 2007.

So I -- I think each of those three factors is present in

this case. I'd note that the Ninth Circuit decision that I just quoted, *Puga v. Chertoff*, suggests that the Court is supposed to look at all three factors, but the Ninth Circuit rarely does so. That was certainly the case in *Puga v. Chertoff* but also in the *Leonardo v. Crawford* case that I mentioned earlier.

In any event, as to that first factor about agency expertise, I would agree with Judge Huie, who wrote in *Lara v. Bondi*, 2026 Westlaw 892021, Page 3, Southern District of California, 2026, that petitioner's claims of error here are routine ones to be decided, in the first instance, by the Board of Immigration Appeals, the administrative tribunal established to review such claims and correct any mistakes and possessing expertise in such review.

The entire purpose of the Board of Immigration Appeals is that it has the expertise to review claims of error, and it can also order additional evidence or order remand for further fact-finding. I would contrast this to the situation that the Ninth Circuit dealt with in *Hernandez v. Sessions*, 872 F.3d 976, Page 989, Ninth Circuit, 2017, which was a case where the issues were purely legal.

The Ninth Circuit, in *Hernandez v. Sessions*, wrote, quote, "An administrative appellate record is not necessary to resolve the purely legal questions presented by plaintiffs' challenge to the Government's policy of refusing to require ICE and

Immigration Judges to consider financial circumstances and alternative conditions of release in bond determinations," end quote.

In contrast to the case in *Hernandez v. Sessions*, here, we're talking about factual arguments that petitioner claims the Immigration Judge got wrong, not general policy matters that this Court could correct once and -- and be done with.

So I do think that agency expertise is implicated here and would be necessary for the agency to consider this to generate a proper record and to reach a proper decision. Again, the Board of Immigration Appeals might require additional fact-finding. It's hard to tell.

Moving on to the second factor -- well, actually, I'll deal with the third factor next. I certainly think the Board of Immigration Appeals could reverse the Immigration Judge and avoid any need for judicial intervention here, and I would find that the factor regarding administrative review weighs in favor of enforcing the prudential exhaustion requirement.

Finally, the second factor about relaxation of the requirement encouraging the deliberate bypass of the administrative scheme -- I think it's particularly important in this context. The Ninth Circuit has held that the issue of whether relaxation of the requirement would encourage the deliberate bypass of the administrative scheme is a key

consideration.

Petitioner -- and this was in *Laing v. Ashcroft*, Page 1000. In our case, petitioner was provided a bond hearing, and the regulations specifically permit that an appeal related to bond and custody determinations may be filed to the Board of Immigration Appeals, citing 8 C.F.R. Section 236.1, Subsection (d)(3). This is a right that Mr. Garcia-Castro availed himself of.

So there is an administrative procedure that he followed, and then he apparently is attempting to deliberately bypass the administrative scheme and seek immediate federal court relief before that process could be completed, which would all but guarantee that -- if this Court reaches the merits of his claims, it would encourage more petitioners to bypass the Board of Immigration Appeals and to go to federal court immediately.

I would also add that I think *Leonardo v. Crawford* is a particularly troublesome case for petitioner. In that case, the District Court originally granted a habeas petition to require a bond hearing before an Immigration Judge. But the Immigration Judge denied bond, concluding that petitioner posed a danger to the community.

Rather than appealing the Immigration Judge's adverse bond determination to the Board of Immigration Appeals, however, petitioner returned to the District Court, arguing that the

hearing failed to satisfy due process or conform to the District Court's previous order. This is all from the *Leonardo* case, at Page 1159.

The Ninth Circuit held that this shortcut was improper, and the Ninth Circuit remanded the case to the District Court with instructions to dismiss the petition due to the exhaustion requirement, citing *Leonardo*, at Pages 1160 and 1161. Although the procedural history in *Leonardo* is somewhat more complicated than the one here, I think the holding squarely controls our facts.

So it seems to me that petitioner -- petitioner's petition should be denied for failure to exhaust administrative remedies and for the other reasons that I mentioned earlier. As always, though, I'm happy to be convinced otherwise. And since my initial take on this case -- or my tentative ruling is to rule against Mr. Garcia-Castro, why don't we hear from him first.

Mr. Garcia-Castro, the floor is yours, sir.

**MR. GARCIA-CASTRO:** Very good afternoon.

I appealed the decision from the bond hearing. That's when this habeas corpus -- I appealed the bond decision indicating that I would present a flight risk. I have a representative, and I have the recommendation letters that indicate that I do not represent a flight risk.

Your Honor, I ask you to please give me the opportunity to be able to fight my case while I'm out on bond.

**THE COURT:** So I -- I think I understand your position, Mr. Garcia-Castro. The problem is that I'm not supposed to grant a habeas petition when you're still -- you still could receive relief from the agency.

So you've appealed the bond hearing decision to the Board of Immigration Appeals. The Board of Immigration Appeals could grant you relief. They could agree with you and let you out on bond.

There are rules that I've just mentioned that say that, in general, federal courts should not intervene in that process, and we should wait for it to come to its conclusion before reviewing those decisions of the agency.

Does that make sense?

**MR. GARCIA-CASTRO:** Yes.

**THE COURT:** So do you have any kind of legal argument for why the Court would intervene at this stage of the proceedings while your case is still on appeal to the Board of Immigration Appeals?

**MR. GARCIA-CASTRO:** No.

**THE COURT:** Okay. Well, I'm afraid that -- I don't see a way that I can grant your habeas petition at this stage. I'm not saying that you might not have a right to release at some point, but I don't -- I think it's premature. I don't think that this Court can hear your habeas petition at this early stage of the proceedings in the posture that it's in now.

Once you've worked your way through the immigration agency's procedures for relief and you've gotten to the end of the road there -- either you've gotten relief or -- if you haven't gotten relief, I think -- if you haven't gotten relief from the agency, then you would be able to file a petition for habeas corpus in federal court, and a federal court could consider it.

I just don't think that I can give you a ruling -- or I can grant you relief at this stage of the process.

**MR. GARCIA-CASTRO:** Yes. That's fine.

**THE COURT:** Okay. All right. Do you have any other arguments that you wish to make, sir?

**MR. GARCIA-CASTRO:** Not at the time being.

**THE COURT:** Okay. All right. Thank you, Mr. Garcia-Castro.

Mr. Norton, anything for the Government?

**MR. NORTON:** Your Honor, given the -- the Court's tentative, unless -- unless there are specific questions about any of the underlying timeline or facts here, respondents generally agree with the Court's analysis.

And noting the -- the *Puga* factors here, because the -- the nature of the appeal is -- is so specific to the Immigration Judge's application of the *Guerra* factors -- that respondents believe it's not appropriate for the Court to intervene at this time.

**THE COURT:** Okay. All right. Anything further, Mr. Garcia-Castro?

**MR. GARCIA-CASTRO:** No. That's fine.

**THE COURT:** All right. Well, I will confirm my tentative ruling. I will deny the habeas petition at this time. We'll issue a short one-page order saying that the habeas petition is denied for the reasons stated on the record.

And, again, Mr. Garcia-Castro, I think, at the right stage of the proceedings, you might be able to seek habeas relief in federal court. I just don't think it's appropriate to do so now for the -- for the reasons that you're seeking to do so.

But I wish you well going forward, sir.

**MR. GARCIA-CASTRO:** Thank you very much.

**THE COURT:** All right. Thank you.

**THE CLERK:** That concludes all matters for today. We're now off the record.

(Proceedings adjourned at 3:11 p.m.)

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Thursday, June 25, 2026

/S/ James C. Pence-Aviles

James C. Pence-Aviles, RMR, CRR, CSR No. 13059
U.S. Court Reporter